IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**THE EVANGELICAL LUTHERAN
GOOD SAMARITAN SOCIETY,
PROPHETS RIVERVIEW,** as authorized
representative of Gladys E. Winkler and
Mary E. Snyder
310 Mosher Dr., Prophetstown, IL 71277,

    PLAINTIFF,

v.                                                                                                          Civil Action No.:

**FELICIA F. NORWOOD,** in her official capacity as
Director of the Illinois Department of
Healthcare and Family Services,
201 South Grand Avenue East
Springfield IL 62763,

    DEFENDANT.

## COMPLAINT FOR DECLARATORY JUDGMENT

## PRELIMINARY STATEMENT

      This case concerns the failure of Defendant, Director of the Illinois Department of Healthcare and Family Services ("HFS"), to ensure that HFS comply with its obligation to afford Medicaid benefits to two residents in a long-term care facility in compliance with the federal rules and regulations of the United States. Defendant is directly responsible for policies necessary for the implementation of a system for determination of eligibility for Medicaid that complies, in all aspects, with federal law. The failure of HFS to grant Medicaid benefits to two residents of Plaintiff's skilled nursing facility is a violation of the Federal

1

Medicaid Act and implementing regulations at 42 U.S.C. § 1396a (a)(17)(b) (1988); 20 CFR § 416.1201(a)(1); 20 CFR § 416.1201(a)(1); 42 U.S.C. § 1396r-5(c)(3).

## PARTIES

1. The Plaintiff, The Evangelical Lutheran Good Samaritan Society, Prophets Riverview ("Prophets Riverview" or "the Facility"), is a corporation organized under the laws of the State of North Dakota, and owns the skilled nursing facility located at 310 Mosher Dr., Prophetstown, IL 71277.

2. The Defendant, Felicia F. Norwood, is the Director of the Illinois Department of Healthcare and Family Services ("HFS"), the state agency charged with administering and supervising the State of Illinois Medicaid program. HFS has the responsibility of processing Medicaid applications in Illinois and performing eligibility determinations on these applications. At all times material to this Complaint, Defendant acted under color of state law in administering the regulations, customs, policies, and practices material herein. The Defendant is sued in her official capacity only.

## JURISDICTION AND VENUE

3. This action arises under the Federal Medicaid Act and statutes governing State Plans for medical assistance, 42 U.S.C. 1396a(r)(1)(A)(ii).

4. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331.

5. Declaratory relief is sought pursuant to 28 U.S.C. §§ 2201 and 2202.

6. Venue lies in this forum pursuant to 28 U.S.C. § 1391(e).

# FACTUAL BACKGROUND

7. Prophets Riverview is a skilled nursing facility in the State of Illinois and, as part of its mission, is dedicated to providing compassionate long-term care for its residents.

8. Gladys E. Winkler and Mary E. Snyder (collectively referred to hereinafter as "the Residents") are residents of Plaintiff's nursing facility.

9. The Residents are "qualified individuals with a disability," as defined under the ADA, 42 U.S.C. § 12132 *et seq.* and 28 C.F.R. § 35.130 *et seq.*

10. HFS is the agency responsible for administering the Medicaid program in the state of Illinois and operates under the statutory authority of Title XIX of the Social Security Act Medical Assistance Program.

11. All actions taken by HFS, as set forth *infra*, and at all times relevant to this Complaint, are imputed to the Defendant.

**A. Gladys E. Winkler**

12. Gladys E. Winkler ("Ms. Winkler") was admitted to Prophets Riverview on or around June 13, 2003. At the time she was admitted, she was seventy-five (75) years of age.

13. Ms. Winkler suffers from numerous medical conditions that require twenty-four (24) hour care and assistance at Prophets Riverview.

14. Ms. Winkler is a "qualified individual with a disability," as defined under the ADA, 42 U.S.C. § 12132 *et. seq.* and 28 C.F.R. § 35.130 *et. seq.*

15. Subsequent to her admission to Prophets Riverview, Ms. Winkler became insolvent and in need of Medical assistance (hereinafter referred to as "Medicaid benefits") to pay for her room, board, care and assistance.

16. On January 20, 2015, Ms. Winkler submitted an application for Medicaid benefits to HFS.

17. On January 25, 2015, HFS issued an approval of Ms. Winkler's Medicaid application with an effective date of October 1, 2014. The approval notice stated that, starting October 2014, Ms. Winkler will owe the Facility eight hundred ninety-four dollars and sixteen cents ($894.16) each month.

18. On January 28, 2015, Prophets Riverview filed an application for Benefits Eligibility on Ms. Winkler's behalf.

19. On June 26, 2015, the State of Illinois Department of Human Services ("DHS") issued an approval of Ms. Winkler's application for Benefits Eligibility, beginning October 1, 2014. In the Notice of Decision, DHS also approved Ms. Winkler to receive assistance with Medicare cost sharing expenses as a qualified Medicare beneficiary beginning June 2015.

20. Due to the delayed effective date for Ms. Winkler's Medicaid benefits, there remains an outstanding balance of sixteen thousand eight hundred eight dollars and twenty-two cents ($16,808.22) for Ms. Winkler's skilled nursing care from June through September 2014.

21. Ms. Winkler requires nursing home care and has since admission to Prophets Riverview on June 13, 2003. The costs incurred by Ms. Winkler from June through September 2014 for nursing home care, skilled services and the incidental needs evidenced in the Invoices[1] are medically necessary due to Ms. Winkler's medical condition.[2]

---

[1] *See* Exhibit "A" (June – September 2014 Invoices from Prophets Riverview).
[2] *See* Exhibit "B" (Medical Opinion in Regards to Other Medical Expenses of Gladys E. Winkler by Hasmukh P. Shah, M.D. (treating physician)).

22. The State of Illinois has refused to allow for deviated liability of medical expenses incurred by Ms. Winkler at Prophets Riverview from June through September 2014 on the basis that Illinois law and state policy do not permit income deductions for nursing home expenses incurred prior to Medicaid eligibility.

**B. Mary E. Snyder**

23. On September 4, 2013, HFS completed a screening as to Mary E. Snyder's ("Ms. Snyder") long-term care needs and determined that nursing facility services are appropriate.[3]

24. Ms. Snyder was admitted to Prophets Riverview on or around September 6, 2013. At the time she was admitted, she was eighty-seven (87) years of age.

25. Ms. Snyder suffers from numerous medical conditions that require twenty-four (24) hour care and assistance at Prophets Riverview.

26. Ms. Snyder is a "qualified individual with a disability," as defined under the ADA, 42 U.S.C. § 12132 *et. seq.* and 28 C.F.R. § 35.130 *et. seq.*

27. Subsequent to her admission to Prophets Riverview, Ms. Snyder became insolvent and in need of medical assistance (hereinafter referred to as "Medicaid benefits") to pay for her room, board, care and assistance.

28. On or around July 28, 2014, Prophets Riverview submitted a new application for Medicaid benefits on behalf of Ms. Snyder.

29. On December 8, 2014, HFS issued an approval of Ms. Snyder's application for Medicaid benefits.

---

[3] Exhibit "C" (September 4, 2013 HFS Screening Report).

30. On or around February 2, 2015, the Social Security Administration ("SSA") designated Prophets Riverview as representative payee for Ms. Snyder.

31. Starting on or about March 3, 2015, SSA began sending regular monthly checks of one thousand three hundred seventy-eight dollars ($1,378.00) to Prophets Riverview.

32. On April 20, 2015, Ms. Snyder executed a written agreement whereby she revoked all Power of Attorney rights from Ashley Fetrow, who is being investigated by the Illinois State Police for defrauding Ms. Snyder of her monies. In the April 20, 2015 agreement, Ms. Snyder requested that her future pension checks and checks that were not distributed to be mailed to her current address at Prophets Riverview.

33. On or around April 21, 2015, a new admission agreement was executed between Mary Snyder, Sue Snyder (her daughter-in-law), and Prophets Riverview.

34. Due to alleged fraud by Ashley Fetrow and the delayed effective date for Ms. Snyder's Medicaid benefits, there remains an outstanding balance of fifty-five thousand twenty-four dollars and eighty-six cents ($55,024.86) for Ms. Snyder's skilled nursing care.

35. The State of Illinois has refused to allow for deviated liability for Ms. Snyder's outstanding medical expenses on the basis that Illinois law and state policy does not permit income deductions for nursing home expenses incurred prior to Medicaid eligibility.

**C. Medicaid Regulations and Applicable Laws**

36. As a condition of receiving federal funds, HFS is required to administer the Medicaid program in the State of Illinois in compliance with the Federal Medicaid Act, 42 U.S.C. 1396a(r)(1)(A)(ii), and implementing regulations.

37. In order to qualify for federal funds, a State must submit its Medicaid plan and any amendments to the federal agency that administers the program, the Centers for Medicare & Medicaid Services ("CMS").

38. Before approving a plan or amendments to a State Plan, CMS conducts a review to determine whether the plan complies with federal requirements. *See e.g. Douglas v. Indep. Living Ctr. Of S. Cal.*, No. 09-958, slip op. at 1 (U.S. Feb. 22, 2012).

39. CMS promulgated a federal regulation requiring states to either deduct from eligibility calculations or reimburse incurred medical expenses to Medicaid recipients. *See* 42 C.F.R. § 435.725(c)(4).

40. The Federal Medicaid Act codifies this requirement and provides that "with respect to the post-eligibility treatment of income for individuals who are institutionalized," states take "into account amounts for incurred expenses for . . . necessary medical or remedial care recognized under State law but not covered under the State plan…." 42 U.S.C. § 1396a(r)(1)(A)(ii).

41. CMS' regulations governing the spend down process define "incurred medical expenses" as any medically necessary, expenses for care and services provided to a recipient prior to his determination of Medicaid eligibility, which necessarily includes room and board costs incurred prior to eligibility. *See e.g. Md. Dep't of Health & Mental Hygiene v. Ctrs. for Medicare & Medicaid Servs.*, 542 F.3d 424, 2008 U.S. App. LEXIS 20318 (4th Cir. 2008) *(*citing 242 C.F.R. § 435.831).

42. The Illinois State Medicaid Plan does not explicitly provide for Long Term Care expenses as a deduction.[4]

---

[4] HFS provides that "Countable income is calculated by adding all income in the resident's name and subtracting

7

43. The Illinois HFS Cash, SNAP, and Medical Manual provides various guidelines to determine if an enrolled case is eligible for spend down. In long-term care cases, the following medical expenses may be considered to determine if spend down is met: "bills or receipts for medical expenses that are verified as being medically necessary **and** that were incurred no more than 6 months prior to application **and** that are for a specific amount. **Medically necessary** means the medical service or item is administered, provided, or prescribed by a professional medical provider." PM 15-08-05: Allowable Medical Expenses, available at https://www.dhs.state.il.us/page.aspx?Item=16555.

44. HFS does not explicitly allow for a deviation of an individual's monthly income to go towards the payment of expenses for long-term care incurred prior to Medicaid eligibility.

45. The Illinois HFS Cash, SNAP, and Medical Manual does not consist of promulgated regulations nor has the Manual, as interpreted by HFS, been approved as part of Illinois' Medicaid State Plan by CMS.

46. CMS permits state plans to enforce "reasonable limits" on the amount of incurred medical expenses, *however*, the state plans must be approved by CMS before the limits may be imposed on Medicaid applicants. *See* 42 C.F.R. § 435.725(c)(4).

47. As defined by CMS' regulations governing the spend down process, "CMS requires states to deduct expenses that the applicant is repaying either at the time of application or that were incurred within three (3) months prior to the filing of the application. *See supra, Md. Dep't of*

---

certain deductions - a personal needs allowance of $30.00, dependent spouse and child allowance, medical bills not paid by Medicaid, medical insurance premium payments, and ongoing medical expenses for medical necessities not paid for by Medicaid." *See* WAG 15-08-00, available at https://www.dhs.state.il.us/page.aspx?item=16536.

*Health & Mental Hygiene* (case hereinafter referred to as "*Maryland*") at **10 (citing 42 C.F.R. § 435.831(f)).

48. Any assertion, that Illinois Medicaid policy limits or precludes the reimbursement of pre-eligibility expenses incurred by a Medicaid recipient for room, board, and medical care received at a nursing home facility prior to Medicaid approval is a violation of the Federal Medicaid regulations; CMS has not previously approved this as a "reasonable limit" in the Illinois state Medicaid plan.[5]

49. The costs incurred by Ms. Winkler from June 1, 2014 through September 1, 2014 for long-term care services were medically necessary. Gladys E. Winkler requires nursing home care and has since admission to Prophets Riverview on June 13, 2003. Nursing home care, skilled services and the incidental needs evidenced in the Invoices[6] are medically necessary due to Gladys E. Winkler's medical condition.[7]

50. The costs incurred by Ms. Snyder from October 1, 2013 through January 1, 2015 for long-term care services were medically necessary. Ms. Snyder requires nursing home care and has since admission to Prophets Riverview on September 5, 2015. Nursing home care, skilled services and the incidental needs evidenced in the Invoices[8] are medically necessary due to Ms. Snyder's medical condition.[9]

---

[5] Any "reasonable limit" must be explicitly approved by CMS. Appendix B, "Limitations on Non-Covered Medical Expenses," as approved by CMS, does not explicitly preclude coverage of pre Medicaid eligibility medical expenses; therefore, DHHS' interpretation of Appendix B imposes a limitation not approved by CMS and in direct conflict with the Federal Regulations.
[6] *See* Exhibit "A" (June – September 2014 Invoices from Prophets Riverview).
[7] *See* Exhibit "B" (Medical Opinion in Regards to Other Medical Expenses of Gladys E. Winkler by Hasmukh P. Shah, M.D. (treating physician)).
[8] *See* Exhibit "D" (October 2013 - January 2015 Invoices from Prophets Riverview).
[9] *See* Exhibit "E" (Medical Opinion in Regards to Other Medical Expenses of Mary E. Snyder by Hasmukh P. Shah, M.D. (treating physician)).

9

51. HFS is *required* by federal law to reimburse for the costs Ms. Winkler and Ms. Snyder incurred for room, board and medical care received at Prophets Riverview prior to their Medicaid eligibility, unless and until the State of Illinois modifies its state plan with approval from CMS. *See* 42 U.S.C. § 1396(a)(r)(1)(A); 42 C.F.R. § 435.725(c)(4).

52. Where a state Medicaid law conflicts with a federal Medicaid statute or regulation, the state law is unenforceable. *See Lankford v. Sherman*, 451 F.3d 496, 510 (8th Cir. 2006).

53. A state may not create regulations that are contrary to federal law. *See Gorlick v. Fla. Dep't of Children and Families*, 789 So.2d 1247 (2001).

54. HFS' Interpretation of Illinois Medicaid policy regarding income deductions for medical expenses incurred prior to Medicaid eligibility is preempted and precluded under Federal Law.

55. Preemption arises where it would not be possible to comply with both federal and state laws at the same time, "or when the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objective[s] of Congress.'" *Pac. Capital Bank, N.A. v. Connecticut*, 542 F.3d 341, 351 (2d Cir.2008) (quoting *United States v. Locke*, 529 U.S. 89, 109, 120 S. Ct. 1135, 1148, 146 L.Ed.2d 69, 89 (2000)). *See, e.g., Lewis v. Alexander,* Case No. 2006-3963 (E.D. Pa. August 23, 2011) (holding that while a state Medicaid law conflicts with a federal Medicaid statute or regulation, the state law is unenforceable).

56. The Illinois HFS Cash, SNAP, and Medical Manual is neither law nor regulation, but conflicts with federal statutes, and is therefore is preempted by those federal statutes.

57. HFS' failure to comply with federal law and regulations regarding Ms. Winkler and Ms. Snyder's Medicaid benefits, to which they are entitled under federal law, places them at risk of being discharged from Prophets Riverview and jeopardizes their health, safety, and wellbeing.

58. HFS has failed to provide a system which ensures that medical assistance will be available, including at least the care and services listed in paragraphs (1) through (5) of 42 U.S.C. § 1396d(a), to all individuals meeting specified financial eligibility standards, as required under 42 U.S.C. § 1396a(a)(10).

59. HFS' failure to afford Ms. Winkler and Ms. Snyder the public benefits and services to which they are entitled under federal law, and failure to grant Medicaid benefits as a reasonable accommodation, constitutes actual or predictable discrimination in violation of the ADA, 42 U.S.C. § 12132 *et seq.* and 28 C.F.R. § 35.130 e*t seq.*

60. The burden placed on HFS, should the Court grant the relief requested in this action, is simply that HFS will be required to comply with federal Medicaid laws; HFS stands to suffer diminutive, if any, burden by the affording Ms. Winkler and Ms. Snyder public benefits to which they are entitled pursuant to federal law.

61. In contrast, the hardship that HFS has inflicted on Prophets Riverview by failing to act on Ms. Winkler and Ms. Snyder's right to public benefits is considerable and impacts Prophet Riverview's fiscal health and ability to care for other residents at the facility.

### IV. CAUSES OF ACTION

### COUNT ONE - DECLARATORY JUDGMENT

62. Plaintiffs incorporate all paragraphs set out above as if fully set out herein.

63. As is more fully set forth herein, an actual, genuine, subsisting, and justiciable controversy exists between Prophets Riverview and Respondent arising out of HFS' failure to afford Ms. Winkler and Ms. Snyder Medicaid benefits as required by federal law.

64. Pursuant to 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure, Prophets Riverview seeks a declaration by this Court as follows:

   a. Whether HFS should afford **Ms. Winkler** an offset of her monthly private pay liability so as such income may be allocated towards the payment of the costs of her room, board care and expenses incurred at Prophets Riverview prior to her Medicaid eligibility.

   b. Whether HFS should afford **Ms. Snyder** an offset of her monthly private pay liability so as such income may be allocated towards the payment of the costs of her room, board care and expenses incurred at Prophets Riverview prior to her Medicaid eligibility.

65. The Court's ruling hereunder shall make certain that which is uncertain and secure that which is insecure.

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs pray that this Court order the following declaratory, prospective, injunctive and equitable relief:

   a. Assume jurisdiction over this action and maintain continuing jurisdiction until Respondent and HFS are in full compliance with every order of this Court;

   b. Declare that HFS be required to zero out **Ms. Winkler's** monthly private pay portion and increase her monthly Medicaid benefits so that her resident's

      income can be deviated toward the repayment of her outstanding balance owed to Prophets for the medical expenses incurred prior to her Medicaid eligibility;

c. Declare that HFS be required to zero out **Ms. Snyder's** monthly private pay portion and increase her monthly Medicaid benefits so that her resident's income can be deviated toward the repayment of her outstanding balance owed to Prophets for the medical expenses incurred prior to her Medicaid eligibility;

d. To take other such actions as are proper and necessary to remedy HFS and Respondent's violations; and

e. Order such equitable and prospective relief as will make Prophets Riverview, Ms. Winkler and Ms. Snyder whole for HFS' unlawful conduct as the Court may deem appropriate.

## COUNT TWO – VIOLATION OF THE "AMERICANS WITH DISABILITIES ACT" ("ADA"), 42 U.S.C. §12132

66. Plaintiffs incorporate all paragraphs set out above as if fully set out herein.

67. The Defendants acted willfully, knowingly, and purposefully with the specific intent to deprive Plaintiff of their rights, privileges, or immunities secured by the ADA by failing to follow the federal regulations and Medicaid laws stated herein.

68. As a consequence of Defendants' actions as described herein, Plaintiffs have suffered damages including compensatory, mental anguish and other damages.

      WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that the Court assume jurisdiction of this action and award Plaintiffs the following relief:

a. Grant Plaintiffs a permanent injunction enjoining Defendants, its agents, successors, employees, attorneys and those acting in concert with Defendants and at Defendants' request from violating the ADA in the manner alleged.

b. Grant Plaintiffs an Order requiring Defendants to make him whole by granting appropriate declaratory relief, compensatory and punitive damages, interest, attorneys' fees, expenses and costs.

c. Plaintiffs pray for such other further, different or additional relief and benefits as justice may require.

## COUNT THREE - 42 U.S.C. § 1983

69. Plaintiffs incorporate all paragraphs set out above as if fully set out herein.

70. The above acts were committed under color of state law by Defendants. Said acts were committed by the Defendants by and through representatives of Defendants acting in their official capacities pursuant to the statutes, ordinances, laws and policies of Defendants.

71. Plaintiffs demand judgment for compensatory damages and punitive damages, where appropriate, in an amount to be determined, for the adverse actions committed by Defendants.

72. The Defendants acted willfully, knowingly, and purposefully with the specific intent to deprive Plaintiffs of his rights, privileges, or immunities secured by the Constitution and laws by the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States and by 42 U.S.C. §1983.

73. As a consequence of' Defendants' actions as described herein, Plaintiffs have suffered damages including compensatory, mental anguish and other damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that the Court assume jurisdiction of this action and award Plaintiffs the following relief:

a. Grant Plaintiffs a permanent injunction enjoining Defendants, its agents, successors, employees, attorneys and those acting in concert with Defendants and at Defendants' request from violating 42 U.S.C. § 1983 in the manner alleged.

b. Grant Plaintiffs an Order requiring Defendants to make him whole by granting appropriate declaratory relief, compensatory and punitive damages, interest, attorneys' fees, expenses and costs.

c. Plaintiffs pray for such other further, different or additional relief and benefits as justice may require.

Respectfully submitted,
**SCHUTJER BOGAR**

Date: 10/4/16

/s/ Katie Van Lake, Esq.
Federal Bar # 6292120
1426 N. 3rd St. Suite 200
P. O. Box 5400
Harrisburg, PA 17110
Phone: (516) 509-1289
Fax: (717) 909-5925
kvanlake@s-b-b.com
*Attorneys for Petitioner*