# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**THE EVANGELICAL LUTHERAN**
**GOOD SAMARITAN SOCIETY,**
**PROPHETS RIVERVIEW, as authorized**
**representative of Gladys E. Winkler and**
**Mary E. Snyder**
**310 Mosher Dr., Prophetstown, IL 71277,**

       **PLAINTIFF,**                  **JUDGE BUCKLO**

**v.**                                **Civil Action No.:16-cv-9491**

**FELICIA F. NORWOOD, in her official capacity as**
**Director of the Illinois Department of**
**Healthcare and Family Services,**
**201 South Grand Avenue East**
**Springfield IL 62763,**

       **DEFENDANT.**

## FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

### PRELIMINARY STATEMENT

This case concerns the failure of Defendant, Director of the Illinois Department of

Healthcare and Family Services ("HFS"), to ensure that HFS comply with its obligation to

afford Medicaid benefits to two residents in a long-term care facility in compliance with the

federal rules and regulations of the United States. Respondent is directly responsible for

policies necessary for the implementation of a system for determination of eligibility for

Medicaid that complies, in all aspects, with federal law. The failure of HFS to grant Medicaid

benefits to two residents of Plaintiff's skilled nursing facility is a violation of the Federal

Medicaid Act and implementing regulations at 42 U.S.C. § 1396a (a)(17)(b) (1988); 20 CFR

§ 416.1201(a)(1); 20 CFR § 416.1201(a)(1); 42 U.S.C. § 1396r-5(c)(3).

1

## PARTIES

1.      The Evangelical Lutheran Good Samaritan Society, Prophets Riverview ("Prophets Riverview" or "the Facility"), is a corporation organized under the laws of the State of North Dakota, and owns the skilled nursing facility located at 310 Mosher Dr., Prophetstown, IL 71277.

2.      Plaintiff Gladys E. Winkler ("Winkler" and/or "Plaintiff") was a resident of Prophets Riverview, and received twenty-four hour skilled nursing care at Prophets Riverview.

3.      Plaintiff Mary E. Snyder ("Snyder" and/or "Plaintiff") was a resident of Prophets Riverview, and received twenty-four hour skilled nursing care at Prophets Riverview.

4.      The Defendant, Felicia F. Norwood, is the Director of the Illinois Department of Healthcare and Family Services ("HFS"), the state agency charged with administering and supervising the State of Illinois Medicaid program.  HFS has the responsibility of processing Medicaid applications in Illinois and performing eligibility determinations on these applications.  At all times material to this Complaint, Defendant acted under color of state law in administering the regulations, customs, policies, and practices material herein.  The Defendant is sued in her official capacity only.

## JURISDICTION AND VENUE

5.      This action arises under the Title XIX of the Social Security Act, 42 U.S.C. § 1396a *et seq*. ("the Medicaid Act"), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, 28 C.F.R. § 35.130, 42 CFR 435.725(e)(1), the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, and the Supremacy Clause, U.S. Const., Art. VI, cl. 2.

6.      Jurisdiction is conferred upon this Court by 28 U.S.C.  §§ 1331 and 1343.

7.      Declaratory relief is sought pursuant to 28 U.S.C. §§ 2201 and 2202.

8.     Venue lies in this forum pursuant to 28 U.S.C. § 1391(b) and Local Rule 82.1.

9.     Medicaid provides health care benefits to qualifying low-income individuals—including, in this case, the elderly and disabled.  42 U.S.C. § 1396a, *et seq*.

10.    Medicaid is a joint federal and state program whereby participating states receive federal financial assistance and, in return, must follow the requirements of 42 U.S.C. § 1396a(a), the Medicaid Act and its rules and regulations.

## FACTUAL BACKGROUND

11.    Prophets Riverview is a skilled nursing facility in the State of Illinois and, as part of its mission, is dedicated to providing compassionate long-term care for its residents.

12.    Gladys E. Winkler and Mary E. Snyder (collectively referred to hereinafter as "the Residents") are residents of Plaintiff's nursing facility.

13.    The Residents are "qualified individuals with a disability," as defined under the ADA, 42 U.S.C. § 12132 *et seq.* and 28 C.F.R. § 35.130 *et seq.* and are "handicapped" as defined under the Rehabilitation Act of 1973.

14.    HFS is the agency responsible for administering the Medicaid program in the state of Illinois and operates under the statutory authority of Title XIX of the Social Security Act Medical Assistance Program.

15.    All actions taken by HFS, as set forth *infra*, and at all times relevant to this Complaint, are imputed to the Defendant.

**A. Gladys E. Winkler**

16.    Gladys E. Winkler ("Ms. Winkler") was admitted to Prophets Riverview on or around June 13, 2003. At the time she was admitted, she was seventy-five (75) years of age.

17.     Ms. Winkler suffers from numerous medical conditions that require twenty-four (24) hour care and assistance at Prophets Riverview.

18.     Subsequent to her admission to Prophets Riverview, Ms. Winkler became insolvent and in need of Medical assistance (hereinafter referred to as "Medicaid benefits") to pay for her room, board, care and assistance.

19.     On January 20, 2015, Ms. Winkler submitted an application for Medicaid benefits to HFS.

20.     On January 25, 2015, HFS issued an approval of Ms. Winkler's Medicaid application with an effective date of October 1, 2014.  The approval notice stated that, starting October 2014, Ms. Winkler will owe the Facility approximately eight hundred ninety-four dollars and sixteen cents ($894.16) each month.

21.     On January 28, 2015, Prophets Riverview filed an application for Benefits Eligibility on Ms. Winkler's behalf.

22.      On June 26, 2015, the State of Illinois Department of Human Services ("DHS") issued an approval of Ms. Winkler's application for Benefits Eligibility, beginning October 1, 2014.  In the Notice of Decision, DHS also approved Ms. Winkler to receive assistance with Medicare cost sharing expenses as a qualified Medicare beneficiary beginning June 1, 2015.

23.     Due to the delayed effective date for Ms. Winkler's Medicaid benefits, there remains an outstanding balance of approximately sixteen thousand eight hundred eight dollars and twenty-two cents ($16,808.22) for Ms. Winkler's skilled nursing care from June through September 2014.

4

24.     Ms. Winkler requires nursing home care and has since admission to Prophets Riverview on June 13, 2003.  The costs incurred by Ms. Winkler from June through September 2014 for nursing home care, skilled services and the incidental needs evidenced in the Invoices[1] are medically necessary due to Ms. Winkler's medical condition.[2]

25.     The State of Illinois has refused to allow for deviated liability of medical expenses incurred by Ms. Winkler at Prophets Riverview from June through September 2014 on the basis that Illinois law and state policy do not permit income deductions for nursing home expenses incurred prior to Medicaid eligibility.

**B. Mary E. Snyder**

26.     On September 4, 2013, HFS completed a screening as to Mary E. Snyder's ("Ms. Snyder") long-term care needs and determined that nursing facility services are appropriate.[3]

27.     Ms. Snyder was admitted to Prophets Riverview on or around September 6, 2013. At the time she was admitted, she was eighty-seven (87) years of age.

28.     Ms. Snyder suffers from numerous medical conditions that require twenty-four (24) hour care and assistance at Prophets Riverview.

29.     Subsequent to her admission to Prophets Riverview, Ms. Snyder became insolvent and in need of medical assistance (hereinafter referred to as "Medicaid benefits") to pay for her room, board, care and assistance.

30.     On or around July 28, 2014, Prophets Riverview submitted a new application for Medicaid benefits on behalf of Ms. Snyder.

---

[1] *See* Exhibit "A" (June – September 2014 Invoices from Prophets Riverview).
[2] *See* Exhibit "B" (Medical Opinion in Regards to Other Medical Expenses of Gladys E. Winkler by Hasmukh P. Shah, M.D. (treating physician)).
[3] Exhibit "C" (September 4, 2013 HFS Screening Report).

5

31.     On December 8, 2014, HFS issued an approval of Ms. Snyder's application for Medicaid benefits.

32.     On or around February 2, 2015, the Social Security Administration ("SSA") designated Prophets Riverview as representative payee for Ms. Snyder.

33.     Starting on or about March 3, 2015, SSA began sending regular monthly checks of approximately one thousand three hundred seventy-eight dollars ($1,378.00) to Prophets Riverview.

34.     On April 20, 2015, Ms. Snyder executed a written agreement whereby she revoked all Power of Attorney rights from Ashley Fetrow, who is being investigated by the Illinois State Police for defrauding Ms. Snyder of her monies. In the April 20, 2015 agreement, Ms. Snyder requested that her future pension checks and checks that were not distributed to be mailed to her current address at Prophets Riverview.

35.     On or around April 21, 2015, a new admission agreement was executed between Mary Snyder, Sue Snyder (her daughter-in-law), and Prophets Riverview.

36.     Due to alleged fraud by Ashley Fetrow and the delayed effective date for Ms. Snyder's Medicaid benefits, there remains an outstanding balance of approximately fifty-five thousand twenty-four dollars and eighty-six cents ($55,024.86) for Ms. Snyder's skilled nursing care.

37.     The State of Illinois has refused to allow for deviated liability for Ms. Snyder's outstanding medical expenses on the basis that Illinois law and state policy does not permit income deductions for nursing home expenses incurred prior to Medicaid eligibility.

**C. Medicaid Regulations and Applicable Laws**

38.     As a condition of receiving federal funds, HFS is required to administer the Medicaid program in the State of Illinois in compliance with the Federal Medicaid Act, 42 U.S.C. 1396a(r)(1)(A)(ii), and implementing regulations.

39.     In order to qualify for federal funds, a State must submit its Medicaid plan and any amendments to the federal agency that administers the program, the Centers for Medicare & Medicaid Services ("CMS").

40.     Before approving a plan or amendments to a State Plan, CMS conducts a review to determine whether the plan complies with federal requirements.  *See e.g. Douglas v. Indep. Living Ctr. Of S. Cal.*, No. 09-958, slip op. at 1 (U.S. Feb. 22, 2012).

41.     CMS promulgated a federal regulation requiring states to either deduct from eligibility calculations or reimburse incurred medical expenses to Medicaid recipients.  *See* 42 C.F.R. § 435.725(c)(4).

42.     The Federal Medicaid Act codifies this requirement and provides that "with respect to the post-eligibility treatment of income for individuals who are institutionalized," states take "into account amounts for incurred expenses for . . . necessary medical or remedial care recognized under State law but not covered under the State plan…." 42 U.S.C. § 1396a(r)(1)(A)(ii).

43.     CMS' regulations governing the spend down process define "incurred medical expenses" as any medically necessary, expenses for care and services provided to a recipient prior to his determination of Medicaid eligibility, which necessarily includes room and board costs incurred prior to eligibility.  *See e.g. Md. Dep't of Health & Mental Hygiene v. Ctrs. for Medicare & Medicaid Servs.,* 542 F.3d 424, 2008 U.S. App. LEXIS 20318 (4th Cir. 2008) *(*citing 242 C.F.R. § 435.831).

44. The Illinois State Medicaid Plan does not explicitly provide for Long Term Care expenses as a permissible deduction.[4]

45. The Illinois HFS Cash, SNAP, and Medical Manual provides various guidelines to determine if an enrolled case is eligible for spend down. In long-term care cases, the following medical expenses may be considered to determine if spend down is met: "bills or receipts for medical expenses that are verified as being medically necessary **and** that were incurred no more than 6 months prior to application **and** that are for a specific amount. **Medically necessary** means the medical service or item is administered, provided, or prescribed by a professional medical provider." PM 15-08-05: Allowable Medical Expenses, available at https://www.dhs.state.il.us/page.aspx?Item=16555.

46. HFS does not explicitly allow for a deviation of an individual's monthly income to go towards the payment of expenses for long-term care incurred prior to Medicaid eligibility.

47. The Illinois HFS Cash, SNAP, and Medical Manual does not consist of promulgated regulations nor has the Manual, as interpreted by HFS, been approved as part of Illinois' Medicaid State Plan by CMS.

48. CMS permits state plans to enforce "reasonable limits" on the amount of incurred medical expenses, *however*, the state plans <u>must</u> be approved by CMS before the limits may be imposed on Medicaid applicants. *See* 42 C.F.R. § 435.725(c)(4).

---

[4] HFS provides that "Countable income is calculated by adding all income in the resident's name and subtracting certain deductions - a personal needs allowance of $30.00, dependent spouse and child allowance, medical bills not paid by Medicaid, medical insurance premium payments, and ongoing medical expenses for medical necessities not paid for by Medicaid." *See* WAG 15-08-00, available at https://www.dhs.state.il.us/page.aspx?item=16536.

49.     As defined by CMS' regulations governing the spend down process, "CMS requires states to deduct expenses that the applicant is repaying either at the time of application or that were incurred within three (3) months prior to the filing of the application.  *See supra, Md. Dep't of Health & Mental Hygiene* (case hereinafter referred to as "*Maryland*") at **10 (citing 42 C.F.R. § 435.831(f)).

50.     Any assertion, that Illinois Medicaid policy limits or precludes the reimbursement of pre-eligibility expenses incurred by a Medicaid recipient for room, board, and medical care received at a nursing home facility prior to Medicaid approval is a violation of the Federal Medicaid regulations; CMS has not previously approved this as a "reasonable limit" in the Illinois state Medicaid plan.[5]

51.     The costs incurred by Ms. Winkler from June 1, 2014 through September 1, 2014 for long-term care services were medically necessary. Gladys E. Winkler requires nursing home care and has since admission to Prophets Riverview on June 13, 2003. Nursing home care, skilled services and the incidental needs evidenced in the Invoices[6] are medically necessary due to Gladys E. Winkler's medical condition.[7]

52.     The costs incurred by Ms. Snyder from October 1, 2013 through January 1, 2015 for long-term care services were medically necessary. Ms. Snyder requires nursing home care and has since admission to Prophets Riverview on September 5, 2015. Nursing home care, skilled

---

[5] Any "reasonable limit" must be explicitly approved by CMS. Appendix B, "Limitations on Non-Covered Medical Expenses," as approved by CMS, does not explicitly preclude coverage of pre Medicaid eligibility medical expenses; therefore, DHHS' interpretation of Appendix B imposes a limitation not approved by CMS and in direct conflict with the Federal Regulations.
[6] *See* Exhibit "A" (June – September 2014 Invoices from Prophets Riverview).
[7] *See* Exhibit "B" (Medical Opinion in Regards to Other Medical Expenses of Gladys E. Winkler by Hasmukh P. Shah, M.D. (treating physician)).

services and the incidental needs evidenced in the Invoices[8] are medically necessary due to Ms. Snyder's medical condition.[9]

53.     HFS is *required* by federal law to reimburse for the costs Ms. Winkler and Ms. Snyder incurred for room, board and medical care received at Prophets Riverview prior to their Medicaid eligibility, unless and until the State of Illinois modifies its state plan with approval from CMS. *See* 42 U.S.C. § 1396(a)(r)(1)(A); 42 C.F.R. § 435.725(c)(4).

54.     Where a state Medicaid law conflicts with a federal Medicaid statute or regulation, the state law is unenforceable. *See Lankford v. Sherman*, 451 F.3d 496, 510 (8th Cir. 2006).

55.     A state may not create regulations that are contrary to federal law. *See Gorlick v. Fla. Dep't of Children and Families*, 789 So.2d 1247 (2001).

56.     HFS' Interpretation of Illinois Medicaid policy regarding income deductions for medical expenses incurred prior to Medicaid eligibility is preempted and precluded under Federal Law.

57.     Preemption arises where it would not be possible to comply with both federal and state laws at the same time, "or when the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objective[s] of Congress.'" *Pac. Capital Bank, N.A. v. Connecticut*, 542 F.3d 341, 351 (2d Cir.2008) (quoting *United States v. Locke*, 529 U.S. 89, 109, 120 S. Ct. 1135, 1148, 146 L.Ed.2d 69, 89 (2000)). *See, e.g., Lewis v. Alexander,* Case No. 2006-3963 (E.D. Pa. August 23, 2011) (holding that while a state Medicaid law conflicts with a federal Medicaid statute or regulation, the state law is unenforceable).

---

[8] *See* Exhibit "D" (October 2013 - January 2015 Invoices from Prophets Riverview).
[9] *See* Exhibit "E" (Medical Opinion in Regards to Other Medical Expenses of Mary E. Snyder by Hasmukh P. Shah, M.D. (treating physician)).

58. The Illinois HFS Cash, SNAP, and Medical Manual is neither law nor regulation, but conflicts with federal statutes, and is therefore is preempted by those federal statutes.

59. HFS' failure to comply with federal law and regulations regarding Ms. Winkler and Ms. Snyder's Medicaid benefits, to which they are entitled under federal law, places them at risk of being discharged from Prophets Riverview and jeopardizes their health, safety, and wellbeing.

60. HFS has failed to provide a system which ensures that medical assistance will be available, including at least the care and services listed in paragraphs (1) through (5) of 42 U.S.C. § 1396d(a), to all individuals meeting specified financial eligibility standards, as required under 42 U.S.C. § 1396a(a)(10).

61. HFS' failure to afford Ms. Winkler and Ms. Snyder the public benefits and services to which they are entitled under federal law, and failure to grant Medicaid benefits as a reasonable accommodation, constitutes actual or predictable discrimination in violation of the ADA, 42 U.S.C. § 12132 *et seq.* and 28 C.F.R. § 35.130 e*t seq.*

62. The burden placed on HFS, should the Court grant the relief requested in this action, is simply that HFS will be required to comply with federal Medicaid laws; HFS stands to suffer diminutive, if any, burden by the affording Ms. Winkler and Ms. Snyder public benefits to which they are entitled pursuant to federal law.

63. In contrast, the hardship that HFS has inflicted on Prophets Riverview by failing to act on Ms. Winkler and Ms. Snyder's right to public benefits is considerable and impacts Prophet Riverview's fiscal health and ability to care for other residents at the facility.

## IV.  CAUSES OF ACTION

## COUNT ONE - DECLARATORY JUDGMENT

11

64.     Plaintiffs incorporate all paragraphs set out above as if fully set out herein.

65.     As is more fully set forth herein, an actual, genuine, subsisting, and justiciable controversy exists between Prophets Riverview and Respondent arising out of HFS' failure to afford Ms. Winkler and Ms. Snyder Medicaid benefits as required by federal law.

66.     Pursuant to 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure, Prophets Riverview seeks a declaration by this Court as follows:

        a.     Whether HFS should afford **Ms. Winkler** an offset of her monthly private pay liability so as such income may be allocated towards the payment of the costs of her room, board care and expenses incurred at Prophets Riverview prior to her Medicaid eligibility.

        b.     Whether HFS should afford **Ms. Snyder** an offset of her monthly private pay liability so as such income may be allocated towards the payment of the costs of her room, board care and expenses incurred at Prophets Riverview prior to her Medicaid eligibility.

67.     The Court's ruling hereunder shall make certain that which is uncertain and secure that which is insecure.

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs pray that this Court order the following declaratory, prospective, injunctive and equitable relief:

a.     Assume jurisdiction over this action and maintain continuing jurisdiction until Respondent and HFS are in full compliance with every order of this Court;

b.     Declare that HFS be required to zero out **Ms. Winkler's** monthly private pay portion and increase her monthly Medicaid benefits so that her resident's income can be deviated

toward the repayment of her outstanding balance owed to Prophets for the medical expenses incurred prior to her Medicaid eligibility;

c.      Declare that HFS be required to zero out **Ms. Snyder's** monthly private pay portion and increase her monthly Medicaid benefits so that her resident's income can be deviated toward the repayment of her outstanding balance owed to Prophets for the medical expenses incurred prior to her Medicaid eligibility;

d.      To take other such actions as are proper and necessary to remedy HFS and Respondent's violations; and

e.      Order such equitable and prospective relief as will make Prophets Riverview, Ms. Winkler and Ms. Snyder whole for HFS' unlawful conduct as the Court may deem appropriate.

## COUNT TWO - VIOLATION OF THE FEDERAL MEDICAID ACT'S MEDICAL ASSISTANCE, AND NURSING FACILITY SERVICES MANDATE

68.      Plaintiffs incorporate all paragraphs set out above as if fully set forth herein.

69.      In violation of the medical assistance and nursing facility services provisions of the Medicaid Act, 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(4)(A), the Defendant, while acting under the color of law, has failed to provide Plaintiffs with nursing facility services necessary for the health and welfare of the disabled Plaintiffs, and deprived Plaintiffs of their property rights.

70.      The Defendant's violations, which have been repeated and knowing, entitle Plaintiffs to relief under 42 U.S.C. § 1983.

## COUNT THREE - VIOLATION OF THE FEDERAL MEDICAID ACT'S REASONABLE PROMPTNESS REQUIREMENT

71.      Plaintiffs incorporate all paragraphs set out above as if fully set forth herein.

72.      Plaintiffs were Medicaid-eligible individuals who required nursing facility

services and resided in Illinois.

73.     The Defendant is engaged in the repeated, ongoing failure to arrange and provide medical assistance and nursing facility services despite the fact that medical assistance and nursing facility services were medically necessary for Plaintiffs.

74.     In violation of 42 U.S.C. § 1396a(a)(8) of the Federal Medicaid Act, the Defendant, while acting under the color of law, failed to provide services to Plaintiffs with "…reasonable promptness…". Furthermore, the Defendant is required to administer the Medicaid program in compliance with 42 C.F.R. §435.930 (requiring applicants be afforded Medicaid benefits without any delay).

75.     The Defendant's violations, which have been repeated and knowing, entitle Plaintiffs to relief under 42 U.S.C. § 1983.

## COUNT FOUR – VIOLATION OF THE "AMERICANS WITH DISABILITIES ACT" ("ADA"), 42 U.S.C. §12132

76.     Plaintiffs incorporate all paragraphs set out above as if fully set forth herein.

77.     The Defendant has failed to provide a system which ensures that medical assistance will be available, including at least the care and services listed in paragraphs (1) through (5) of 42 U.S.C. § 1396d(a), to all individuals meeting specified financial eligibility standards, as required under 42 U.S.C. § 1396a(a)(10).

78.     Plaintiffs were "qualified individual with a disability," as defined under the ADA, 42 U.S.C. § 12132 *et. seq.* and 28 C.F.R. § 35.130 *et. seq.*

79.     The Defendant's failure to afford Plaintiffs public benefits and services, to which they were entitled under federal law, without adequate due process, and failure to grant them Medicaid benefits as a reasonable accommodation, constitutes actual or predictable

discrimination in violation of the ADA, 42 U.S.C. § 12132 *et seq.* and 28 C.F.R. § 35.130 *et seq.*

80. Defendant's actions disproportionately impact disabled persons such as Plaintiffs.

81. As a consequence of Defendant's actions as described herein, Plaintiffs suffered damages, including compensatory, mental anguish, and other damages.

## COUNT FIVE – VIOLATION OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 794

82. Plaintiffs incorporate all paragraphs set out above as if fully set forth herein.

83. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, prohibits public entities and recipients of federal funds from discriminating against any individual by reason of disability. Public and federally-funded entities, such as Defendant, must ensure, and has failed to ensure to Plaintiffs that "no qualified handicapped person, shall on the basis of handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity that receives or benefits from federal financial assistance." See 28 C.F.R § 41.51(a).

84. Defendant has directly, or through contractual or other arrangements, utilized criteria or methods of administration i) that have the effect of subjecting Plaintiffs to discrimination on the basis of handicap, and ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program with respect to Plaintiffs in violation of 28 C.F.R § 41.51(b)(3).

85. Defendant is a recipient of federal funds under the Rehabilitation Act. The Plaintiffs are qualified individuals with a disability under Section 504 of the Rehabilitation Act.

86. The actions by Defendant constitute unlawful discrimination under 29 U.S.C. § 794(a), violate the mandate that no qualified handicapped person should be denied benefits on

the basis of handicap, and violate the regulations implementing this statutory prohibition. 28 C.F.R. § 41.51(d).

87. Plaintiffs are individuals who requires 24-hour skilled nursing services for their health, welfare, and survival. The Defendants' failure to grant payment of needed benefits to Plaintiffs violates § 504 of the Rehabilitation act of 1973 and its implementing regulations.

88. As a consequence of Defendant's actions as described herein, Plaintiffs have suffered damages, including compensatory, mental anguish and other damages.

**COUNT SIX – VIOLATION OF DUE PROCESS
CLAUSE –AND EQUAL PROTECCTION CLAUSE UNDER 42 U.S.C. § 1983**

89. Plaintiffs incorporate all paragraphs set out above as if fully set forth herein.

90. Defendants deprived Plaintiffs of their property interest to which Plaintiffs had a legitimate claim of entitlement. The procedures implemented by Defendant to deprive Plaintiffs of their property interest are and were constitutionally insufficient.

91. To comply with the Due Process guarantees under the United States Constitution, the Defendant must provide the Plaintiffs with a meaningful notice that apprises them of the reasons for a denial of assistance, the authority for the denial, and an opportunity to appeal such denial of assistance.

92. Plaintiffs are entitled to a hearing when such benefits are denied to him for the reasons enumerated under the Federal Medicaid act.

93. Defendant's failure to issue decertification notices to Plaintiffs and failure to allow for a hearing process of a denial of Plaintiffs' required nursing services care does not adequately apprise them of the actions against them, or of the reasons for the denial, or the authority for the denial. Such actions by Defendant are inconsistent with the Due Process Clause

16

of the United States Constitution, Amendment XIV and the Medicaid Act, Title XIX of the

Social Security Act, Title 42 § 1396a, et seq., and its implementing regulations.

94.     The Defendant acted wilfully, knowingly, and purposefully with the specific

intent to deprive Plaintiffs of their rights, privileges, and immunities secured by the Constitution

and laws by the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the

United States and by 42 U.S.C. §1983.

95.     The above acts were committed under color of state law by the Defendants. Said

acts were committed by the Defendant by and through representatives of the Defendant acting in

their official capacities pursuant to the statutes, ordinances, laws and policies of the Defendants

96.     As a consequence of the Defendant's actions as described herein, Plaintiffs

suffered damages including compensatory, mental anguish, and other damages.

### COUNT SEVEN – TEMPORARY AND PERMANENT INJUNCTION

97.     Plaintiffs incorporate all paragraphs set out above as if fully set forth herein.

98.     The above acts were committed under color of state law by the Defendant. Said

acts were committed by and through representatives of the Defendant acting in her official

capacity pursuant to the statutes, ordinances, laws and policies of the Defendant.

99.     The Plaintiffs demands temporary and permanent injunctive relief requiring that

the Defendant grant to Plaintiffs payment for their required nursing services care and/or the

requiring Defendant to provide care to Plaintiffs.

100.    Plaintiffs further demand temporary and permanent injunction requiring the

Defendants to arrange for medical assistance and nursing facility services to Plaintiffs and allow

sufficient and adequate due process rights to Plaintiffs.

## VI. REQUESTS FOR RELIEF

1.     Issue a Declaratory Judgment in favor of Plaintiffs, requiring Defendant to adhere to the requirements of the Federal Medicaid Act, the Americans with Disabilities Act, and the Rehabilitation Act;

2.     Declare unlawful the Defendant's failure to arrange for medical assistance and nursing facility services to Plaintiffs;

3.     Issue Preliminary and Permanent Injunctive relief enjoining the Defendant from subjecting Plaintiffs to practices that violate their rights under the Federal Medicaid Act, the Americans with Disabilities Act, and the Rehabilitation Act;

4.     Issue Preliminary and Permanent Injunctive relief requiring the Defendant to arrange for medical assistance and nursing facility services to Plaintiffs;

5.     Award Plaintiffs the costs of this action, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205; § 504 of the Rehabilitation Act, and 42 U.S.C. § 1988; and,

6.     Award such other relief as the Court deems just and appropriate, including, but not limited to, compensatory and punitive damages, interest, expenses and costs.

**PLAINTIFFS HEREBY DEMAND A TRIAL BY JURY.**

Respectfully submitted,

/s/ Katie Z. Van Lake
ARDC# 6292120
sb2, Inc.
1426 N. 3rd Street, Suite 200
Harrisburg, PA 17102
Telephone: (516) 509-1289
Facsimile: (717) 909-5925
kvanlake@s-b-b.com
*Attorney for Plaintiffs*